Civil Action No. 2:20-cv-1124

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

The Honorable J. Nicholas Ranjan
_____

D.A., by and through his parents D.A. and W.A.,
Plaintiffs,

v.

Penn Hills Public School District,
Defendants.
_____

**D.A.'s Brief in Support of Motion for Summary Judgment**
_____

Jonathan Steele, Esquire
PA ID 313969
Steele Schneider
One Gateway Center
420 Fort Duquesne Blvd., Suite 500
Pittsburgh, PA 15222
jonathansteele@steeleschneider.com

                        Counsel for Plaintiffs

# Table of Contents

1. Introduction.................................................................................................3

2. Issue Statement ...........................................................................................4

   D.A. is a disabled Penn Hills SD resident enrolled at Central Catholic. Because Penn Hills provides transportation services to district residents enrolled in its schools, Pennsylvania law requires that it also provide identical transportation services to residents enrolled in local private schools, like Donovan. In spite of Federal laws and regulations prohibiting Penn Hills SD from treating Donovan differently than his non-disabled peers, Penn Hills SD claims that Pennsylvania regulations provide it a basis to exclude Donovan from its transportation services. Is the District correct?

3. Facts and Proceedings Below .....................................................................4

   *3.1 Procedural History ............................................................................5*

   *3.2 Summary of ODR Opinion.................................................................6*

4. Standard of Review.....................................................................................6

5. Argument ....................................................................................................7

   *5.1 Public schools are prohibited from discriminating against children with disabilities who reside within their boundaries, regardless of their enrollment status. ................................................................................................8*

   *5.2 The ADA and §504 supersede Pennsylvania's Chapter 15 enrollment requirement. ......................................................................................10*

   *5.3 Pennsylvania public schools that offer transportation services to their enrolled students must provide equal access to residents who attend local private schools. ...........................................................................................12*

   *5.4 The Hearing Officer erred in the application of both the federal supremacy of Section 504 and the plain language of Pennsylvania's school transportation mandate in dismissing D.A.'s claim. ..............................................14*

6. Conclusion ................................................................................................14

1. Introduction

Penn Hills School District buses arrive at Central Catholic High School every school day. Penn Hills residents who attend Central Catholic rely on this publicly funded transportation to get to and from school without any additional cost or requirement that they enroll in Penn Hills School District. The District provides this daily transportation because state law requires them to do so. According to Pennsylvania's School Code, if a District provides transportation to public school students, like Penn Hills does, it must also transport residents that attend local private schools like Central Catholic.

Federal legislation also impacts the District's transportation services. Section 504 and the ADA, among other laws, require Penn Hills' transportation services to accommodate children with disabilities. Accordingly, the District provides door-to-door transportation, employees bus aides, and provides other accommodations to ensure equal access to this essential service.

Penn Hills erroneously believes these obligations do not mix. It argues Pennsylvania's § 504 implementing regulations give it a license to deny children with disabilities transportation accommodations. The District points to the regulation's apparent requirement that a student be enrolled to obtain disability accommodations from a public school.

Luckily, multiple paths exist to avoid the District's attempt to weaponize Pennsylvania's § 504 implementing regulations. First, the regulation is preempted by its broader federal enabling legislation and accompanying federal regulations.

Second, it does not apply to the instant dispute. Because in Pennsylvania, a child does not need to enroll in a public school to be entitled to a public school operated transportation. As a public school operation, this transportation cannot escape the requirements of the ADA and § 504.

These paths lead to the welcome conclusion that public schools must accommodate students with disabilities when they provide transportation to similarly situated non-disabled peers.

## 2. Issue Statement

The issue before the court involves the interaction of Section 504, the ADA, and Pennsylvania's Section 504 implementing regulations with Pennsylvania's School Code transportation mandate.

> D.A. is a disabled Penn Hills SD resident enrolled at Central Catholic. Because Penn Hills SD provides transportation services to district residents enrolled in its schools, Pennsylvania law requires that it also provide identical transportation services to residents enrolled in local private schools, like Donovan. In spite of Federal laws and regulations prohibiting Penn Hills SD from treating Donovan differently than his non-disabled peers, Penn Hills SD claims that Pennsylvania regulations provide it a basis to exclude Donovan from its transportation services. Is the District correct?

## 3. Facts and Proceedings Below

D.A. is a fifteen-year-old resident of the Penn Hills School District. Jt. Stip. of Facts at ¶ 1, (Oct. 26, 2020). D.A. is currently enrolled in Central Catholic High School. *Id.* at ¶ 2. D.A. has attended a parochial school his entire educational career and has never enrolled in the Penn Hills School District. *Id.* at ¶ 3.

Until recently, the District recognized D.A.'s status as a protected handicapped student who qualified for a Section 504 service agreement due to his

4

diagnosis of asthma, peanut allergy, depression, and anxiety. *Id.* at ¶¶ 4-6, 11. The District prepared a § 504 Student Accommodation Plan that provided D.A. with, among other accommodations, door-to-door transportation. *Id.* at ¶¶ 11, 12. This plan ended in September 2019, when the District met with D.A.'s parents and informed them that the District would no longer pay to provide door-to-door transportation. *Id.* at ¶ 15.

D.A.'s family attempted to resolve this issue with the District by filing a complaint with the U.S. Department of Education Office of Civil Rights. *Id.* at ¶ 16. The parties reached a Resolution Agreement through mediation on January 24, 2020. *Id.* Unfortunately, the resolution was short-lived.

On February 10, 2020, the District's Superintendent told D.A.'s parents that the District was "concluding services provided through [D.A.'s] Chapter 15/Section 504 Service Agreement … due to [D.A.'s] enrollment at Central Catholic High School." *Id.* at ¶ 17. The Superintendent further stated that "[d]ue to D.A.'s enrollment in a parochial school, he is not a protected student with a disability eligible for a Section 504 Service Agreement from the District." *Id.* at ¶ 18.

### 3.1 Procedural History

On May 6, 2020, D.A.'s parents filed a Due Process Complaint in Pennsylvania's Office for Dispute Resolution docketed at ODR File Number 23685-19-20. Jt. Appx Exhibit 1. The Due Process Complaint alleged that Penn Hills School District violated Section 504 of the Rehabilitation Act by failing to provide D.A. with access to specialized transportation. *Id.* at 4 ¶ 11. The parties identified

5

the central legal issue and agreed to brief the matter. Jt. Appx Exhibit 7 at 1. On July 9, 2020, Special Education Hearing Officer Cathy Skidmore granted the District's Motion to Dismiss. *Id*. Following the Hearing Officer's decision, D.A.'s parents filed this litigation on July 28, 2020, appealing the Hearing Officer's decision and adding a claim under the ADA. Compl. at ¶¶ 7-10, 40-45.

## 3.2 Summary of ODR Opinion

Special Education Hearing Officer Cathy Skidmore dismissed D.A.'s claims in a difficult to interpret opinion. The Hearing Officer reasoned that the law does not demand that the District continue to provide transportation for D.A. to a private school under a Section 504 Accommodation Plan. Jt. Appx Exhibit 7 at 6-8. Despite no discussion regarding D.A.'s claim of discrimination as compared to other non-disabled students' access to District-provided transportation to private schools, the Hearing Officer concluded that the District had not discriminated against D.A. because of his disability and granted the District's Motion to Dismiss. *Id*. at 8. This appeal followed.

## 4. Standard of Review

"[S]ummary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (quoting Fed. R. Civ. P. 56(c)). In deciding a motion for summary judgment, "[t]he reviewing court should view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." *Burton v. Teleflex, Inc.* 707 F. 3d 417, 425 (3d Cir.

2013). However, to prevail on a motion for summary judgment, "the non-moving party must present more than a scintilla of evidence; 'there must be evidence on which the jury could reasonably find for the [non-movant].'" *Jakimas v. Hoffman-La Roche, Inc.* 485 F. 3d 770, 777 (3d Cir. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Cross-motions for summary judgment are subject to the same standards as unilateral motions, and each is handled as a distinct, independent motion. *Doe v. Indian River School Dist.*, 685 F. Supp. 2d 524, 531 (D. Del. 2010) (citing *Rains v. Cascade Indus. Inc.*, 402 F.2d 241, 245 (3d Cir. 1968).

### 5. Argument

Section 504 and the ADA's overlapping prohibition against disability discrimination provide a firm foundation for the plaintiffs' argument. With nearly identical language, these acts dictate that no otherwise qualified individual with a disability shall be excluded from participation in or denied the benefits of a public entity, 42 U.S.C. § 12132 (ADA), or any program or activity that receives federal funds. 29 U.S.C. § 794(a) (§504).

To establish a *prima facie* case of disability discrimination under § 504, D.A. must prove that (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified" to participate in school activities; (3) the school receives federal financial assistance; (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at the school; and (5) the school or the board of education knew or should be reasonably expected to know of his disability. *W.B. v. Matula,* 67 F.3d 484, 492 (3d Cir. 1995); *Ridgewood Bd. of Educ. v. N.E.,* 172 F.3d 238, 253 (3d

7

Cir.1999). All of the same elements, except the third element relating to federal funds, are required to establish a *prima facie* case of discrimination under the ADA. *Indiana Area Sch. Dist. v. H.H.*, 428 F. Supp. 2d 361, 363 (W.D. Pa. 2006).

Here the parties' dispute concerns the second element. D.A. argues that Penn Hills' state-mandated transportation to local private schools is a public-school operation subject to Section 504 and the ADA. It is undisputed that D.A. qualifies for Penn Hills funded transportation to Central Catholic. However, the District claims Pennsylvania's Section 504 implementing regulations extinguish their need to provide accommodations to students with disabilities enrolled in private school, even when they are access public transportation. This argument is untenable when the broad scope of federal disability protections overlays every aspect of a public school's operations.

**5.1 Public schools are prohibited from discriminating against children with disabilities who reside within their boundaries, regardless of their enrollment status.**

As a federally funded public entity, federal disability protections permeate every aspect of a public school. Section 504 specifically defines the term "program or activity" to mean "all of the operations of a local educational agency." 29 U.S.C. § 794(b)(2)(B) and (b)(3)(A)(ii). The ADA is similarly comprehensive and applies to all the "services, programs, or activities of a public entity." 28 CFR § 35.102. Because of this substantial overlap, Courts frequently apply these statutes in unison. *Ridley School Dist. v. M.R.* 680 F.3d 260, 282–83 (3d Cir. 2012) (stating "the substantive

8

standards for determining liability under the Rehabilitation Act and the ADA are the same.")

Their application is not limited to academic services or to students enrolled in the public school. A school "shall provide non-academic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities." 34 C.F.R. § 104.37(a)(1). These services include transportation. *Id.* at § 104.37(a)(2). Public schools must also accommodate parents or adult members of the public that interact with their operations, including school board meetings, extracurricular programs, and teacher conferences. 56 Fed. Reg. 35696 (July 26, 1991) ("Public school systems must comply with the ADA in all of their services, programs, or activities, including those that are open to parents or to the public.").

In addition to these broad principles, Section 504's regulations provide specific requirements concerning a public school's obligation to provide an appropriate education. A school must "provide a free appropriate public education to each qualified handicapped person *who is in the recipient's jurisdiction*, regardless of the nature or severity of the person's handicap. 34 CFR § 104.33(a) (emphasis added). To offer an "appropriate" education under the Rehabilitation Act, a school district must reasonably accommodate the needs of the handicapped child to ensure meaningful participation in educational activities and meaningful access to educational benefits. *Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 280 (3d Cir. 2012); See also, *Vicky M. v. Ne. Educ. Intermediate Unit*, 2009 WL 4044711, at *6 (M.D. Pa.

9

Nov. 20, 2009) (confirming, "While this creates an affirmative duty under Section 504 to those students residing within a school district's geographic boundaries, it does not explicitly exclude other students from being protected. Indeed if a school district voluntarily included students from other districts, it would make no logical sense that Section 504 would not shield those students from discrimination.") This comprehensive promise of equal access is illusory if state regulations, aimed at implementing that promise, can undermine it.

**5.2 The ADA and §504 supersede Pennsylvania's Chapter 15 enrollment requirement.**

Pennsylvania's enactment of Chapter 15, cannot shrink a school district's responsibilities under federal disability laws. Chapter 15 makes clear, "the full description of substantive responsibilities of school entities is set forth in Section 504 and the Section 504 regulations . . . and not in this chapter." 22 Pa. Code § 15.11(a). Further, it not the purpose of Chapter 15 "to preempt, create, supplant, expand or restrict the rights or liabilities of protected handicapped students or school entities beyond what is contemplated by Section 504 . . ." 22 Pa. Code § 15.11 (c).

Chapter 15 is not designed to provide a path where an eligible student under § 504 can be found ineligible under Chapter 15. This is how the District seeks to use it. To the contrary, Chapter 15, is designed to further § 504's goals by attempting to get eligible students to participate in the school program and extracurricular activities "to the maximum extent appropriate," 22 Pa. Code § 15.3, and to provide them with the accommodations they need so their access equates with the access of

nondisabled students. *Lower Merion Sch. Dist. v. Doe*, 445, 931 A.2d 640, 644 (Pa. 2007).

Under the federal regulations, a public-school district's § 504 and ADA obligations extend to every qualified handicapped person within their jurisdiction, regardless of enrollment. 34 CFR § 104.33; *Lower Merion Sch. Dist. v. Doe*, 931 A.2d 640, 644 (Pa. 2007). (Holding "§ 504's mandates apply to all potentially eligible students based on their residency, not their school attendance; as long as [a child] is in the District's jurisdiction, the District has to provide what § 504 mandates.")

Yet, Penn Hills School District seeks to topple the comprehensive framework of federal disability discrimination protection by pointing to a single state regulation to deny a student with a disability equal access to publicly funded school transportation. The District does not dispute that D.A. is disabled or needs transportation accommodations. The sole reason Penn Hills is denying D.A. transportation accommodations is his enrollment status. Jt. Stip. of Facts at ¶20. Yet in application, it is D.A.'s disability status that denies him access to transportation.

The District turns to 22 Pa. Code § 15.3 to support their decision. There the code states, "A school district shall provide each protected handicapped student *enrolled* in the district . . . those related aids, services or accommodations which are needed to afford the student equal opportunity to participate in and obtain the benefits of the school program and extracurricular activities without discrimination. . ." 22 Pa. Code § 15.3. This section has no relevance to the instant dispute. Not only

because Pennsylvania's implementing regulations are preempted by the federal regulations but also because Pennsylvania's public school transportation statute does not require a child to enroll to qualify for free transportation services from their local public school.

Certainly, D.A.'s enrollment in a private school impacts the scope of Penn Hills' obligations. While D.A.'s previous 504 accommodation plan included academic accommodations- it did not need to. Jt. Appx. Exhibit 9. Penn Hills does not interact with D.A. concerning any of his academic needs. It would be inappropriate to expect Penn Hills to understand his academic needs and plan for Central Catholic to implement appropriate accommodations- when, as a private institution, they may not be required to do so.

Section 504 recognizes this limitation. If a public school made a free and appropriate public education available to a child with a disability and the parents chose to place the child in a private school, the public school is not required to pay for the private education. 34 CFR §104.33 (c) (4). D.A.'s parents are not seeking payment for D.A.'s tuition or Penn Hill's assistance with academic service. Their request is narrowly tailored to obtain equal access to the publicly funded transportation provided to all Penn Hills residents that attend local schools.

## 5.3 Pennsylvania public schools that offer transportation services to their enrolled students must provide equal access to residents who attend local private schools.

The interaction of federal disability protections and Pennsylvania's Public School Code is what creates D.A.'s right to transportation to his private school. For

purposes of public-school funded transportation, Pennsylvania's School Code does not differentiate between public and nonpublic school students, requiring transportation services for both if provided to either. See *Sch. Dist. of Pittsburgh v. Dep't of Educ.*, 33 Pa. Cmwlth. 535, 382 A.2d 772 (1978), aff'd, 483 Pa. 539, 397 A.2d 1154 (1979). *Wyland v. W. Shore Sch. Dist.*, 52 A.3d 572, 578 (Pa. Commw. Ct. 2012).

Section 13-1361 states in relevant part:

> When provision is made by a board of school directors for the transportation of public school pupils to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided, the board of school directors *shall* also make *identical* provision for the free transportation of pupils who regularly attend nonpublic . . . schools not operated for profit to and from such schools or to and from any points within or without the Commonwealth in order to provide field trips as herein provided.

24 P.S. § 13-1361(1). Once the decision is made to provide transportation to public school students, the statute mandates that school boards "shall also make identical provision" for the transportation of qualified private school students. *Crowe ex rel. Crowe v. Sch. Dist. of Pittsburgh*, 805 A.2d 691, 695 (Pa. Commw. Ct. 2002). Penn Hills School District's transportation policy mirrors this statute. Jt. Appx. Exhibit 8.

Under this statutory scheme, a child does not need to enroll in a public school to be entitled to a public school funded transportation. It is this unique law that creates Penn Hill's obligation to accommodate D.A.'s effort to access transportation. This transportation mandate creates a public school operation subject to Section 504 and the ADA that serves children with disabilities who are not enrolled in

13

public school. The only way for Penn Hills to escape this obligation is to not offer transportation services at all.

### 5.4 The Hearing Officer erred in the application of both the federal supremacy of Section 504 and the plain language of Pennsylvania's school transportation mandate in dismissing D.A.'s claim.

The Hearing Officer's decision below missed the mark. Instead of recognizing *Lower Merion* for the simple proposition that federal law controls, the decision examined the student's dual enrollment status- something a private school student would need to access academic services but not the transportation services requested here. Jt. Appx. Exhibit 7 at 5. It also highlighted that Pennsylvania's school transportation statute did not specifically incorporate or reference Section 504. *Id.* at 7. Certainly, the application of federal disability protections is not dependent on a state legislature's recognition of those obligations. If Pennsylvania did intend to carve out students with disabilities enrolled in private schools, mandating "*identical provision* for the free transportation of pupils who regularly attend nonpublic school" is an odd means of obtaining that goal. Since the decision rests solely on legal conclusions, this court is not bound by its findings or conclusion.

### 6. Conclusion

The law controlling this claim may best be understood via its hypothetical application. A non-disabled Central Catholic student who resides in Penn Hills School District has the opportunity to ride a Penn Hills bus to and from school every day. Central Catholic does not subsidize the cost of this transportation in any way.

The student did not have to enroll in Penn Hills or pay any additional fee for this opportunity. Rather, the student was taking advantage of Pennsylvania's decision to confer "upon all children the right to be transported safely to their school." *Springfield Sch. Dist., Delaware Cty. v. Dep't of Ed.*, 397 A.2d 1154, 1171 (Pa. 1979).

Under Penn Hills' framework, D.A. does not have that opportunity. He isn't excluded because of his enrollment status- the non-disabled student above has the same enrollment status. Rather, his disability controls his access. Neither the federal government nor Pennsylvania intended such a result.

Wherefore, the Court should grant Plaintiffs' Motion for Summary Judgment.

Respectfully submitted,


/s/ *Jonathan Steele, Esquire*
Jonathan Steele, Esquire
PA ID 313969
Steele Schneider
One Gateway Center
420 Fort Duquesne Blvd., Suite 500
Pittsburgh, PA 15222
jonathansteele@steeleschneider.com

**Certificate of Service**

I hereby certify that on November 2, 2020, the foregoing Plaintiffs' Brief in Support of Motion for Summary Judgment was filed electronically on the Court's ECF System and served on all parties of records through the ECF system.

/s/ <u>*Jonathan Steele, Esquire*</u>
Jonathan Steele, Esquire