**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

D.A., by and through his parents D.A.
and W.A.,

               Plaintiffs,

      v.

PENN HILLS PUBLIC SCHOOL
DISTRICT,

              Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

2:20-cv-1124-NR

**<u>OPINION</u>**

**J. Nicholas Ranjan, United States District Judge**

Before the Court are the parties' cross-motions for summary judgment.  ECF 18; ECF 21.  In their complaint, Plaintiffs D.A. and his parents, D.A. and W.A., allege that Defendant Penn Hills Public School District discriminated against D.A. (who is a high school student) in violation of his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794.  *See* ECF 1.  According to Plaintiffs, D.A. has several medical conditions that, without an accommodation, make it impossible for him to use the transportation services that Penn Hills provides to all students in the district, no matter if they are enrolled in public or private school.  Because of those conditions, D.A. cannot make it to his assigned bus stop on the district's pre-existing route and has trouble riding on the standard bus for the entire duration of the trip.  Plaintiffs contend that Penn Hills failed to provide D.A. with equal access to its transportation services by refusing his request for the reasonable accommodation of specialized door-to-door transportation.

In their summary judgment motion, Plaintiffs argue that the undisputed material facts establish the elements of their equal access, failure-to-accommodate theory.  In response, Penn Hills does not take issue with any of Plaintiffs' asserted

facts, but instead rejects Plaintiffs' suggested legal framework for analyzing their claim. According to Penn Hills, to resolve this case, the Court need only "assess whether the District discriminated against D.A. by offering only the transportation other students have access to, and reserving door-to-door transportation to those students who have enrolled in the District's public school program." ECF 22, p. 4. Penn Hills asserts that, as a matter of law, it does not have to provide this specialized transportation to "parentally placed 504 students who are not dually enrolled, so long as the District has offered a [Free Appropriate Public Education] to the student within its own district." *Id.* Since Penn Hills offered D.A. a FAPE and his parents opted out, the district argues that it has not discriminated against D.A. by denying his requested accommodation.

After carefully considering the parties' arguments, the Court agrees with Plaintiffs. Plaintiffs assert a non-FAPE failure-to-accommodate claim. That is a claim that any disabled individual can bring against a public entity receiving federal funds. Applying that framework, because Penn Hills provides busing to other public and privately enrolled students in its district, it has a duty to reasonably accommodate D.A.'s disability to provide him with equal access. That duty includes a duty to provide door-to-door transportation services, which the parties agree are necessary to accommodate D.A.'s disability and otherwise are a reasonable accommodation. *See* ECF 30. The Court will therefore enter summary judgment in favor of Plaintiffs.

## BACKGROUND

D.A., a minor, is a resident of the Penn Hills School District. ECF 17, ¶ 1. D.A., however, is currently enrolled in Central Catholic High School, a private parochial school. *Id.* at ¶ 2. D.A. has attended parochial school throughout his entire

educational career and has never enrolled in any of the public schools in the Penn Hills School District. *Id.* at ¶ 3.

D.A.'s treating physicians have diagnosed him with several conditions, including asthma, depression, anxiety, and a peanut allergy. *Id.* at ¶ 4. As a result of these conditions, D.A. requires certain accommodations to participate in school activities. *Id.* at ¶ 6.

Penn Hills provides transportation services for students enrolled in public schools in the district. *Id.* at ¶ 8. Penn Hills, as mandated by state law, also provides transportation to students who are enrolled in eligible nonpublic schools within a ten-mile distance of district boundaries, including, specifically, students who are enrolled in Central Catholic. *Id.* at ¶¶ 9-10.

Before the 2019-20 school year, Penn Hills provided D.A. with door-to-door transportation to Central Catholic under a "Section 504 Service Agreement"[1] he had with the district. *Id.* at ¶¶ 11-13. But in September 2019, Penn Hills informed D.A.'s parents that it would be discontinuing the door-to-door transportation. *Id.* at ¶ 15. In response, D.A.'s family filed a complaint with the U.S. Department of Education Office of Civil Rights. *Id.* at ¶ 16. The parties settled their dispute through mediation on January 24, 2020. *Id.*

Despite that resolution, on February 10, 2020, Penn Hills' Superintendent informed D.A.'s parents that the district was "concluding services provided through [D.A.'s] Chapter 15/Section 504 Service Agreement … due to [D.A.'s] enrollment in Central Catholic High School." *Id.* at ¶ 17.

---

[1] Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability ... be denied the benefits of ... any program or activity." 29 U.S.C. § 794(a). School districts will oftentimes create a "Section 504 Service Agreement" to accommodate disabled students' needs, such as through the provision of certain specialized transportation services. *See, e.g., Molly L. ex rel. B.L. v. Lower Merion Sch. Dist.*, 194 F. Supp. 2d 422, 425 (E.D. Pa. 2002).

After that, D.A.'s parents filed a due-process complaint with Pennsylvania's Office for Dispute Resolution. ECF 20-1. The due-process complaint alleged that Penn Hills violated Section 504 by failing to provide D.A. with access to specialized transportation. *Id.* at p. 4, ¶ 11. Penn Hills moved to dismiss the complaint, and the special education hearing officer granted the motion. ECF 20-7.

After dismissal of the due-process complaint, Plaintiffs filed this case. Because the parties believed that this case presented pure issues of law, they agreed to a streamlined procedure, which the Court approved. That is, the parties agreed that they would only engage in a brief period of informal discovery, submit a joint stipulation of facts, and then cross-move for summary judgment. *See* ECF 15. After the parties fully briefed their respective motions, the Court held oral argument. ECF 27. The motions are now ready for disposition.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At summary judgment, the Court must ask whether the evidence presents "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). In making this determination, "all reasonable inferences from the record must be drawn in favor of the nonmoving party and the court may not weigh the evidence or assess credibility." *Goldenstein v. Repossessors, Inc.*, 815 F.3d 142, 146 (3d Cir. 2016) (cleaned up). The moving party bears the initial burden to show the lack of a genuine dispute of

material fact, and "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," summary judgment is improper.  *Id.* (cleaned up).

Simply put, summary judgment is "'put up or shut up' time for the non-moving party: the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument."  *Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (citation omitted).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted.  *Celotext Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

"The rule is no different where there are cross-motions for summary judgment."  *Lawrence v. City of Phila.*, 527 F.3d 299, 310 (3d Cir. 2008).  The parties' filing of cross-motions "does not constitute an agreement that if one is rejected the other is necessarily justified[.]"  *Id.* (cleaned up).  But the Court may "resolve cross-motions for summary judgment concurrently."  *Hawkins v. Switchback MX, LLC*, 339 F. Supp. 3d 543, 547 (W.D. Pa. 2018) (Conner, J.) (citations omitted).  When doing so, the Court views the evidence "in the light most favorable to the non-moving party with respect to each motion."  *Id.* (citations omitted).

## DISCUSSION & ANALYSIS

### I.  Plaintiffs assert a non-FAPE, failure-to-accommodate claim under the ADA and Rehabilitation Act.

The parties have dueling views as to the appropriate legal framework that applies in this case. On one hand, Plaintiffs argue that they should prevail under an equal access, failure-to-accommodate theory.  On the other hand, Penn Hills argues that Plaintiffs cannot establish liability because the district need not provide "FAPE-

related services"[2] to a privately enrolled student—an argument that depends on Plaintiffs bringing a claim based on the denial of a FAPE.

Because of the parties' divergent views on the fundamental nature of the case, the threshold question the Court must resolve is, what type of claim are Plaintiffs pursuing?  Are Plaintiffs pursuing a straightforward failure-to-accommodate claim, as they suggest in their motion?  Or are they asserting a FAPE-related claim, as Penn Hills counters in its motion?

After careful consideration, the Court agrees with Plaintiffs—the central claim here is whether Penn Hills denied D.A. equal access to its busing services by refusing his requested accommodation of door-to-door transportation.

The ADA and the Rehabilitation Act allow for both types of claims outlined in the parties' cross-motions.   Under those statutes (and often along with the Individuals with Disabilities Education Act), a plaintiff can bring a claim based on a school district failing to provide "meaningful access to education by offering individualized instruction and related services appropriate to her 'unique needs.'" *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 755 (2017).  Essentially, a student can allege that the school district has denied him or her a FAPE.  *Id.* at 755-56.  But a student can also bring a claim for simple discrimination under those statutes, regardless of the school district's obligation to provide a FAPE.  *Id.* at 756.  That claim hinges on the allegation that he or she has been denied the opportunity to "participate equally to all others in public facilities and federally funded programs."  *Id.*  This distinction is important because these claims have different analytical frameworks.

---

[2] "FAPE" stands for "free appropriate public education."  Under the Individuals with Disabilities Education Act and the Rehabilitation Act, a school district must ensure that enrolled disabled students receive a "free appropriate public education."  20 U.S.C. § 1412(a)(1); 34 C.F.R. § 104.33(a).

"One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions." *Id.* That is, the court should first ask, "could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was ***not*** a school—say, a public theater or library? And second, could an ***adult*** at the school—say, an employee or visitor—have pressed essentially the same grievance?" *Id.* (emphasis in original). When the answer to those questions is "yes," the complaint is "unlikely to be truly about" the denial of a FAPE, because in "those other situations there is no FAPE obligation and yet the same basic suit could go forward." *Id.* But when the answer is "no," "then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim." *Id.*

"A further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings." *Id.* at 757. A prior pursuit of "administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.*

Here, the "gravamen" of the complaint is not the denial of a FAPE for at least three reasons.

First, the primary thrust of Plaintiffs' complaint is that Penn Hills "has refused to provide D.A. with a reasonable accommodation that will allow him to access the publicly funded service of school transportation." ECF 1, ¶¶ 36, 42. As Penn Hills concedes, that claim does not reference or require a FAPE. ECF 24, p. 6. While Plaintiffs mention that Penn Hills "has discriminated against" D.A. "by denying him eligibility for a 504/Chapter 15 Service Agreement" (ECF 1, ¶ 34), they have

abandoned that claim. In their briefing, Plaintiffs make clear that the claim they are pursuing "fit[s] th[e] non-FAPE mold" because it does not depend on the "denial of FAPE or take issue with the quality of education D.A. receives." ECF 23, p. 3. At oral argument, Plaintiffs' counsel was even more explicit about the focus of their claim. *See* ECF 28, 3:7-13 ("[Plaintiffs] are here today seeking an accommodation of door-to-door transportation so he can receive equal access to the transportation operation already underway under the Penn Hills School District that's available to all residents of the Penn Hills School District whether they are enrolled in the public school or a local nonprofit private school.").

Second, Plaintiffs' claim could be viable against any public or federally funded entity that provides transportation services, albeit with a different regulatory framework. For example, Plaintiffs could bring a substantively similar claim against a federally funded public transit authority if it refused to make a reasonable accommodation that would allow D.A. to have equal access its services. The core elements of that claim would be the same: (i) the public transit authority provides transportation services to the public along pre-planned routes, (ii) D.A. cannot access the nearest pre-planned route because of his disability, and (iii) the transit authority refused D.A.'s request for the reasonable accommodation of door-to-door transportation so that he could have equal access to those services. *See, e.g.*, *Scalercio-Isenberg v. Port Authority of N.Y & N.J.*, 487 F. Supp. 3d 190 (S.D.N.Y. 2020) (deciding failure-to-accommodate claim brought by a disabled plaintiff against a transit authority). That Plaintiffs could bring a substantively similar claim outside the school setting strongly suggests that his case has nothing to do with denial of a FAPE.

Third, "nothing in the nature of [Plaintiffs'] suit suggests any implicit focus on the adequacy of [D.A.'s] education." *Fry*, 137 S. Ct. at 758. Nor could it. Penn Hills

is not providing D.A. with his education; Central Catholic is. Although it's true that Plaintiffs initially pursued administrative remedies, and that would normally suggest that Plaintiffs are bringing FAPE-related claims, under the circumstances here, that fact is less persuasive. Plaintiffs pursued many of the same non-FAPE claims and arguments in the administrative proceeding and have since clarified that they only went through that process in an ultimately unsuccessful attempt to obtain a speedy resolution. ECF 23, p. 3.

Thus, this case is properly analyzed under an equal access, failure-to-accommodate framework.

## II.     Plaintiffs are entitled to summary judgment because Penn Hills had to accommodate D.A., even though he was not enrolled in the district.

Generally speaking, "to establish a violation of Title II of the ADA, a plaintiff must allege that: (1) he is a qualified individual with a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability." *Muhammad v. Ct. of Common Pleas of Allegheny Cty., Pa.*, 483 F. App'x 759, 762 (3d Cir. 2012) (citations omitted). "The requirements for a claim under [Section 504] are the same as those under the ADA with the additional requirement that a plaintiff alleging a violation of [Section 504] demonstrate that the violation was committed by a program or activity receiving Federal financial assistance." *Id.* at 762-63 (cleaned up).

"[A] plaintiff can assert a failure to accommodate as an independent basis for liability under the ADA and [Section 504]." *Id.* at 763. To establish such a claim here, D.A. must also show that "the accommodation he seeks is reasonable, i.e., that it is necessary to avoid discrimination on the basis of disability." *Id.* (cleaned up). The burden is at first on Plaintiffs to articulate a reasonable accommodation. *See K.K. v. N. Allegheny Sch. Dist.*, No. 14-218, 2017 WL 2780582, at *11 (W.D. Pa. June

27, 2017) (Conti, J.). Once they have done that, the burden of proof then shifts to Penn Hills to "establish that the requested relief would require an unduly burdensome or fundamental alteration of state policy[.]" *Id.*

"The test to determine the reasonableness of a modification is whether it alters the essential nature of the program or imposes an undue burden or hardship in light of the overall program." *Id.* (cleaned up). This is a "fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the modification in light of the nature of the disability in question and the cost to the organization that would implement it." *Anderson v. Franklin Inst.*, 185 F. Supp. 3d 628, 650 (E.D. Pa. 2016) (cleaned up).

"A failure-to-accommodate claim differs from other ADA claims in that the ADA does not require a failure-to-accommodate plaintiff to show that his injury was the result of purposeful discrimination." *Muhammad*, 483 F. App'x at 764 (citation omitted). Instead, the ADA's "'by reason of' language requires a showing of causation: the plaintiff must demonstrate that, but for the failure to accommodate, he would not be deprived of the benefit he seeks." *Id.* (citation omitted).

Applying this standard, Plaintiffs are entitled to summary judgment.

Penn Hills' central argument is that "[i]f a school district offers a FAPE program to a student with a disability and the parent chooses to place the student in a private placement, the school district has no obligation under 504 to provide or pay for any transportation services." ECF 22, p. 6. That may be true, but it is beside the point.

Irrespective of Penn Hills' FAPE-related obligations, under the ADA and Section 504, Penn Hills "must afford disabled and nondisabled students an equal opportunity to receive transportation for nonacademic purposes." *K.K.*, 2017 WL 2780582, at *10. The reason for this rule lies in the interplay between Pennsylvania's

statutory requirements for providing transportation to and from school and federal law. That is, Pennsylvania law states that if a school district provides transportation to its enrolled students, it must also provide that same transportation to eligible private-school students within a ten-mile distance of the district's boundaries. 24 Pa. Stat. Ann. § 13-1361. Once the district offers that service to all those students, federal law states it cannot discriminate against students with disabilities by denying them equal access. *See* 34 C.F.R. § 104.37(a)(1)-(2) (a recipient of federal funds that operates a public elementary or secondary education program "shall provide non-academic and extracurricular services in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities," including "transportation").

To accomplish that equal access, as a public entity, Penn Hills "has an affirmative duty to make reasonable modifications in its policies and programs to avoid discrimination on the basis of disability." *K.K.*, 2017 WL 2780582, at \*13 (cleaned up). Thus, Plaintiffs can prevail on their claim if they can prove that the district knew D.A. "could not participate in the transportation program" because of a disability but "refused to make a reasonable modification in its program" to provide "access to the program equal to that" of nondisabled students. *Id.*; *see also K.N. v. Gloucester City Bd. of Educ.*, 379 F. Supp. 3d 334, 349 (D.N.J. 2019) ("As Plaintiffs point out, and the District does not dispute, even if an activity may not be required for FAPE by IDEA, Section 504, the ADA, and NJLAD may still require a school to provide supports to allow equal access."); *Spencer County (KY) Sch. Dist.*, 31 IDELR 38 (OCR 1998) ("Since the student was placed by his parent in the private educational program, i.e., home schooling, the District was not responsible for the student's transportation to or from his special education class in a District school **except to**

***the extent it provided transportation services to similar students without
disabilities***." (emphasis added)).

That is precisely the claim that Plaintiffs are bringing here.  As a result, the
cases that Penn Hills cites in support of its argument are unhelpful because they
address the completely different FAPE-related claim under the ADA and Section 504.

For example, Penn Hills relies heavily on *D.L. v. Baltimore City Bd. of Sch.
Comm'rs*, 706 F.3d 256 (4th Cir. 2013).  In that case, however, the student's parents
explicitly challenged whether he should be allowed "to access special education
services while enrolled in a non-public school[.]"  *Id.* at 258.  The argument was that
the relevant regulations "mandate that [the district] provide [the student] with a
FAPE at a public school even while he continues to enroll in and attend a private
school."  *Id.* at 259.  The court rejected that argument because it "would create an
individual right to special education and related services where none exists."  *Id.* at
260.  Thus, unlike here, denial of a FAPE was at the heart of the case.

The same goes for the other case that Penn Hills cites, *Lauren W. ex. rel. Jean
W. v. DeFlaminis*, 480 F.3d 259 (3rd Cir. 2007).  In that case, the plaintiff complained
that she was denied related services necessary to provide her with a FAPE because
she was not dually enrolled.  *Id.* at 273-74.  By contrast, Plaintiffs are not asking
Penn Hills to provide any services related to the provision of a FAPE.

Penn Hills' misapprehension about the true nature of Plaintiffs' claim is why
its argument that "D.A. has failed to demonstrate that the District has engaged in
discrimination by reason of D.A.'s disability" misses the mark.  ECF 24, p. 2.  From
Penn Hills' perspective, any "'differential treatment' of D.A. is by reason of his private
school enrollment, and not his disability."  *Id.*  But that's only because Penn Hills
believes its obligation to provide specialized transportation can only arise in the
context of meeting its FAPE obligations.  As discussed above, that is not the case.

Penn Hills must provide equal access to its public services, separate and apart from providing a FAPE. When viewed through that lens, D.A. is treated differently than his non-disabled peers enrolled in Central Catholic—they can all ride the district's bus to school, while D.A. is left out because of his various disabling conditions. Thus, if Penn Hills "refused when requested by [D.A.] to make a reasonable modification in its transportation program to afford [him] access to the program equal to that of [his nondisabled peers]," that could support a finding that Penn Hills discriminated against him in violation of the ADA and Section 504. *K.K.*, 2017 WL 2780582, at *14.

Given that Plaintiffs' theory of liability here is legally correct, that turns out to dispose of the entire case. That is, the parties agree that D.A. has requested an accommodation to allow him to benefit from the transportation services offered by the district. ECF 17, ¶ 11. That means an "individualized inquiry" must be made "to determine whether a specific modification for a particular person's disability would be reasonable under the circumstances as well as necessary for that person, and yet at the same time not work a fundamental alteration." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 688 (2001). Usually, these issues require some factual elaboration and oftentimes will present disputes of fact. But not here. The parties have stipulated that door-to-door transportation for D.A. is necessary to accommodate his disability, and that it is a reasonable accommodation under the circumstances. ECF 30 ("The Parties agree that door-to-door transportation is necessary for D.A. and reasonable under the circumstances."). As a result, summary judgment may be entered in favor of Plaintiffs' on their failure-to-accommodate claims.

## <u>CONCLUSION</u>

For the reasons above, the Court will grant Plaintiffs' summary-judgment motion, deny Defendant's cross-motion, and enter final judgment in favor of Plaintiffs.  An appropriate order, consistent with this opinion, follows.[3]

DATED this 13th day of May, 2021.

BY THE COURT:

/s/ J. Nicholas Ranjan
United States District Judge

---

[3] The relief that this Court orders is a declaration as to the parties' rights and obligations, which is what Plaintiffs seek in their complaint and what Plaintiffs appear to be seeking in their summary-judgment briefing.  Plaintiffs' complaint also pleads injunctive relief and damages, but Plaintiffs have not presented any evidence or argument warranting that relief, and so have forfeited that requested relief.